## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## DETROIT DIVISION

| | | |
|---|---|---|
| Amber Lowe, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:24-cv-10054-LJM-CI |
| Trinity Health-Michigan, | § § | Hon. Laurie J. Michelson |
| Defendant. | § | Mag. J. Curtis Ivy, Jr. |

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiff Amber Lowe ("Lowe" or "Plaintiff") and Defendant Trinity Health-Michigan ("Defendant" or "Trinity") move for approval of the FLSA settlement reached in this case. The settlement was reached through mediation with respected FLSA mediator Eric Galton and is presumptively the result of arm's-length negotiations that are fair and reasonable to the collective action members who are eligible to participate.

Pursuant to Local Rule 7.1, the parties have conferred and jointly seek the relief requested in this Motion.

The parties respectfully submit as follows:

**BRIEF IN SUPPORT OF JOINT MOTION**
**FOR APPROVAL OF FLSA SETTLEMENT**

## I.      STATEMENT OF THE ISSUES

The issue presented in this Brief is whether the Court should approve the proposed FLSA settlement in this case. Given the parties' agreement that the proposed FLSA settlement represents a fair and reasonable settlement of a *bona fide* dispute under the FLSA, the answer to this question is: yes, the Court should approve the proposed FLSA settlement.

## II.   CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR THE RELIEF SOUGHT

The parties direct the Court to *Fabi v. Carter-Jones Cos., Inc.*, No. 21-11727, 2022 WL 3010887, at *1 (E.D. Mich. July 29, 2022) (Michelson, J.) (citing *Athan v. United States Steel Corp.*, 523 F. Supp. 3d 960, 965 (E.D. Mich. Mar. 3, 2021)), a prior order of this Court containing the necessary authority supporting this approval motion.

### III.   BACKGROUND

Plaintiff filed this FLSA lawsuit on January 8, 2024. (ECF No. 1.) In her Complaint, Plaintiff alleged that Defendant failed to pay all overtime wages due to Plaintiff because Defendant did not compensate its direct care patient employees in Michigan for meal breaks during which they were actually interrupted or subject to interruption for Defendant's primary benefit. (*Id.*) After providing Plaintiff with some preliminary discovery, the scope of the potential collective was narrowed to Registered Nurses and Emergency Department Technicians (also known as Patient Care Technicians) who work or worked in the Emergency Departments at Defendant's Ann Arbor Hospital, Chelsea Hospital, and Trinity Health Livingston Hospital.

The parties attended several telephonic conferences with the Court where the Court proposed that the parties engage in mediation, and the parties did engage in mediation before Eric Galton, a respected FLSA mediator, on September 11, 2024. The parties did not reach resolution on that day but continued to negotiate the claims alleged in this lawsuit over the course of several weeks. The parties later reached the proposed settlement that they bring to the Court for approval today.

### IV.   AGREED MOTION FOR FLSA CERTIFICATION FOR SETTLEMENT PURPOSES

The Court has not yet certified a collective action in this case. The Parties stipulate and agree, for purposes of the settlement only, that notice of the settlement

to all "Settlement Class Members" in the settlement agreement is proper under the relevant standard, and that the settlement collective action members are similarly situated in all relevant respects under the FLSA. (*See* Ex. 1, ¶ 12(a).)

In the event the Court does not approve the proposed settlement, the Parties will first attempt to effectuate a settlement that addresses the Court's concerns. If those attempts are unsuccessful, the Parties will return to their respective postures and may submit opposed briefing regarding the propriety of issuance of notice to putative collective action members.

## V.    SUMMARY OF SETTLEMENT

The parties have reached a proposed FLSA settlement agreement which provides substantial monetary relief to participating settlement collective action members. (Ex. 1.) The settlement provides gross relief in the amount of $450,000.00. This gross settlement amount is well within the range of acceptable compromise in FLSA cases and ensures that the average settlement collective action member will receive $302.69, after the payment of attorneys' fees, which is within the normal range of recovery for claims of this type.

The settlement is structured as a claims-made reversionary settlement, meaning that each settlement collective action member will receive notice of the settlement and the specific amount available to them and have the option to claim the funds made available under the settlement in exchange for a release of their wage

and hour claims against Defendant, or to reject the offer and proceed without releasing any claims. The proposed notice to the settlement collective action members is attached as Exhibit A to the settlement agreement and a similar version has been approved for use in other cases not involving Defendant. (*Id.*)

The settlement collective action members will receive a personalized version of the notice documents attached as Exhibit A to the settlement agreement. These documents clearly explain the nature, terms, and scope of the settlement agreement, the release, and the amount of compensation they may recover from the settlement. The settlement collective action members will have sixty (60) days to consent to receive their share of the settlement and release their wage and hour claims, which is an appropriate amount of time given the number of settlement class members.

The participating settlement class members will be paid a settlement award from the net settlement amount. The allocated amounts are based on the complete time and pay records transmitted to Plaintiff's counsel. The settlement amounts to be paid are based on the potential settlement class members' full-time equivalency ("FTE") which the parties used to glean the number of potential meal breaks each settlement collective action member allegedly may have missed during the relevant time period. (*See* Ex. 1, ¶ 14.) If any settlement collective action member does not timely return a release of claims, they will not be bound by the settlement agreement and will be free to proceed with their own action against Defendant, but the

settlement allocation of that individual will return to Defendant. In other words, the failure of a settlement collective action member to join the case will not increase the pro rata share to participating settlement collective action members or otherwise inure to the benefit of the participating settlement collective action members. Rather, Defendant will retain any unclaimed sums. This is a material term of the settlement agreement.

Plaintiff respectfully requests that, in the event the Court approves the settlement agreement, the Court dismiss this lawsuit, including Plaintiff's claims and the claims of the participating settlement collective action members, with prejudice.

Fifty percent of the settlement award to each participating settlement class member shall be treated as back wages, and accordingly, on each settlement award, the settlement administrator shall effectuate federal and applicable state income and employment taxes, levies, child support orders, and similar withholdings as required by law with respect to 50% of each settlement award distributed, and Defendant shall pay Defendant's customary employer share of all required federal and state payroll taxes on such amounts. The remaining 50% of each settlement award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings or employer payroll taxes. Each participating settlement class member shall be solely and legally responsible

to pay all taxes on the non-wage penalties and liquidated damages portion of the settlement award.

## VI.   ARGUMENT AND AUTHORITIES

### A.   Relevant Standards

"Although the Sixth Circuit has never definitively answered the question of whether court approval is required for FLSA settlement agreements, district courts in [this] Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 964-65 (E.D. Mich. 2021 (collecting cases). In the past, this Court has noted the disagreement as to whether FLSA settlements must be approved, which is a developing area of law,[1] but has approved FLSA settlements upon request. *See Fabi v. Carter-Jones Cos., Inc.*, No. 21-11727, 2022 WL 3010887, at *1 (E.D. Mich. July 29, 2022).

---

[1]     *See, e.g.*, *Askew v. Inter-Continental Hotels Corp.*, 620 F. Supp. 3d 635, 643 (W.D. Ky. 2022) ("Faced with a statute that doesn't require court approval before dismissal, and a Rule that presumes the opposite, the Court concludes that FLSA is not an 'applicable federal statute' under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest."); *Regalado v. Albuquerque Mail Serv., Inc.*, No. 2:22-cv-00012-MIS/DLM, 2023 WL 3649001, at *3 (D.N.M. May 25, 2023) (finding no settlement approval needed for collective action settlement, in part because "the settlement agreement only binds those members of the potential FLSA collective who accept the personalized settlement offer and execute the release of their wage and hour claim."); *Walker v. Marathon Petroleum Corp.*, No. 2:22-CV-1273-NR, 2023 WL 4837018, *3 (W.D. Pa. 2023) (nothing in the text of FLSA requires or even authorizes court approval of FLSA settlements even where the settlement involves absent opt-in plaintiffs because of fundamental difference between opt-in collective and Rule 23 class actions).

To approve this settlement agreement, the Court must conclude that it is a fair and reasonable resolution of a bona fide legal dispute. *See id.* (quoting *Athan*, 523 F. Supp. 3d at 965). Courts consider the following factors "(1) the risk of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of plaintiff's success on the merits; and (5) the public interest in settlement." *Adams v. Liberty Healthcare Servs, LLC*, No. 2:22-cv-31322024 WL 923567, at * 1 (S.D. Ohio Feb. 7, 2024) (quoting *Clevenger v. JMC Mech., Inc.*, No. 2:15-cv-2639, 2015 WL 12681645, at *1 (S.D. Ohio Sept. 25, 2015). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case. *Id.* (quoting *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011). Courts must also consider the reasonableness of attorneys' fees and costs, even when negotiated as part of the settlement. *See Fabi*, 2022 WL 3010887, at *1 (quoting *Lakosky v. Disc. Tire Co.*, No. 14-13362, 2015 WL 4617186, at *1 (E.D. Mich. July 31, 2015).

**B.     The Settlement Is a Fair, Reasonable, and Adequate Resolution of Plaintiff's Claims Against Defendant.**

**1.     The Settlement Was Not the Product of Fraud or Collusion, But Rather a Resolution of a Bona Fide FLSA Dispute Reached Through Mediation Before a Respected FLSA Mediator.**

The parties reached the proposed settlement through mediation before respected FLSA mediator, Eric Galton. It was not the product of fraud or collusion,

but rather an arm's-length settlement reached over the course of settlement negotiations beginning on September 11, 2024, and proceeding over weeks thereafter. Throughout the process, the parties debated the merits and realities of the claims, defenses, and the parties' respective financial circumstances relative to prolonged litigation. Counsel for both sides, experienced and prepared labor and employment attorneys, zealously represented the parties' best interests.

This settlement eliminates the risks and costs both sides would bear if this litigation continued to trial and potential appeal(s). In agreeing upon the proposed settlement, the parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion as to the strength and weaknesses of Plaintiff's claims in comparison to the respective costs and risks associated with further drawn-out litigation. The parties agree, for their own independent reasons, that settlement is appropriate.

**2.  The Claims at Issue Involve Complicated Issues of Fact and Law. Settlement Removes the Risk of Further Delay Which Could Compromise the Ability of Plaintiff and the Settlement Collective Action Members to Collect from Defendant.**

The claims Plaintiff advanced are not without complexity. Determination of the merits of Plaintiff's claims would have involved whether notice should be issued to the collective action members under *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), discovery relevant to the amount of time worked by each of the collective action members, whether those hours worked exceeded the

maximum hours prescribed by the FLSA, and whether the meal breaks were compensable because the collective action members were not completely relieved of duty and performed "inactive" duties for Defendant's predominant benefit. *See, e.g.*, *Henson v. Pulaski Cty Sherriff Dep't*, 6 F.3d 531, 534 (8th Cir. 1993). These claims require extensive discovery and testimony to develop, and a timely resolution such as this saves both parties the risk of a complete judgment for their opponent as well as the time and expense of developing those facts. This factor weighs in favor of approval.

### 3.    The Parties Completed Adequate Informal Discovery to Evaluate the Claims and Applicable Defenses.

Defendant provided sufficient relevant records of the employment of the collective action members for Plaintiff's counsel to create a model for the potential exposure of Defendant to damages for unpaid overtime wages according to Plaintiff's allegations. This discovery was more than adequate for the parties to form an opinion about the amount of risk and costs associated with further proceedings.

### 4.    The Likelihood of Plaintiff's Success on the Merits Supports the Proposed Settlement.

Defendant vigorously disputed its liability in this case. Defendant pointed to various policies supporting its position that any uncompensated meal breaks were fully relieved, which would jeopardize Plaintiff's chances of recovery. Defendant also provided evidence showing that the Registered Nurses and Emergency

Department Technicians at the subject hospitals were fully compensated any time they reported working through their meal break.

Defendant further disputed the Court would properly exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Defendant contended that Plaintiff's damages would be significantly reduced given its position that Plaintiff and allegedly similarly situated workers such as the collective action members eligible to participate in the proposed settlement frequently did not work in excess of forty hours in a workweek.

All of these respective positions and contentions support the Court approving the proposed settlement, which will eliminate the risk that the collective action members would receive no money from this lawsuit, but also eliminates the risk that Defendant is found responsible for all alleged damages including Plaintiff's attorneys' fees, which would only grow during continued litigation.

### 5.    The Public Interest in Settlement Militates in Favor of Approval.

Finally, the public interest is served by the proposed settlement as it implicitly serves the purpose and intent of Congress in enacting the FLSA—"to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (quoting Sen.

Rep. No. 884 (75th Conf., 1st Sess.)). Plaintiff and the settlement collective action members will receive a fair percentage of their claimed damages in light of the legal, factual, and practical issues presented in this case.

In exchange for the promised payments, Plaintiff and the settlement collective action members who choose to participate in this action will dismiss their claims in this case with prejudice and without any further costs or fees to any party. They will also provide an appropriate release to Defendant and appropriately related entities. No claim has been released that cannot be waived under the law. This is a fair and reasonable settlement serving the public interest given the risks presented by continued litigation.

## C.     The Proposed Attorneys' Fees and Cost Award Is Reasonable.

Finally, Plaintiff's proposed attorneys' fees represent forty percent of the gross settlement amount inclusive of incurred costs. Forty percent of the gross settlement amount is in keeping with the fee agreement Plaintiff signed with Plaintiff's counsel.

The amount of attorneys' fees as compared to the Plaintiffs' recovery is "neither uncommon nor unreasonable," and is significantly less than other approved settlements. *Pittman v. Matalco (U.S.), Inc.*, No. 4:18CV203, 2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018); *See also*, *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) (upholding attorneys' fees of $40,000 which were 520% of the Plaintiff's recovery); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354 (5th Cir. 1990) (affirming attorneys'

fees in an amount 545% of the Plaintiff's recovery). Indeed, the rate sought by Plaintiff's counsel is within the "ordinary 20% - 50% range" of contingency percentages. *See, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (affirming district court's finding that contingency fees for class funds have ranged from thirty-five to forty percent, and that thirty percent contingent fee "is on the low side" for labor litigation); *Hiser v. NZone Guidance*, LLC, No. 1:18-CV-01056-RP, 2021 WL 2934896, at *3 (W.D. Tex. Jan. 25, 2021) (Pitman, J.) ("The settlement agreement requires that [the defendant] pay 40 percent of the total settlement amount to FLSA Plaintiffs' counsel to cover attorney's fees and costs, in addition to 'advanced litigation expenses.' [...] This percentage is in line with [w]hat courts have approved in reviewing other FLSA settlements."); *Swanson v. Cathedral Energy Servs., Inc.,* No. 17-CV-01578-DDD, 2019 WL 4858453, at *3 (D. Colo. Oct. 2, 2019); *Rodriguez v. 5830 Rest. Corp*., No. 21-CV-01166-KLM, 2023 WL 1507195, at *10 (D. Colo. Feb. 3, 2023) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis"); *Bennett v. SimplexGrinnell LP*, No. 11-cv-01854-JST, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) (38.8% of a $4.9 million common fund); *Rivas v. BG Retail, LLC*, No. 16-cv-06458-BLF, 2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) (awarding 40% of a common fund); *Birch v. Office Depot, Inc.*, No. 06cv1690 (S.D. Cal. Sept. 28, 2007) (awarding a 40% fee on a $16 million wage

and hour class action); *Rippee v. Boston Market Corp.*, No. 05 Civ. 1359, 2006 WL 8455400, at *4 (S.D. Cal. Oct. 10, 2006) (approving 40% fee in light of favorable result, counsel's skill and considerable risk undertaken).

This Court has acknowledged that fees and costs which are "almost equal to [a plaintiff's] recovery" may be reasonable depending on the nature of the claims and the amount of work completed by plaintiff's counsel. *Fabi*, 2022 WL 3010887, at *3 (E.D. Mich. July 29, 2022) (citing *Thompson v. United Stone, LLC*, No. 1:14-cv-224, 2015 WL 867988, at *2 (E.D. Tenn. Mar. 2, 2015) ("The possibility of an attorney's fee that eclipses any overtime pay award should add to the incentive for an employer to make a quick and just resolution of even the most minor overtime claims.")).

Here, Plaintiff's counsel engaged in substantial investigation, drafting of pleadings, several conferences with the Court and opposing counsel, reviewing hundreds of records related to the settlement collective action members, and negotiation of the settlement through mediation and for weeks thereafter, drafting and reviewing the settlement agreement and notice, drafting and reviewing this motion for approval, and the early resolution of this lawsuit was largely due to the Court's promotion of the concept that this case should be resolved without extensive litigation and motion practice. Accordingly, an award of the requested attorneys'

fees, from which case expenses such as the mediation fee, filing fee, and other expenses will be deducted, is appropriate.

## VII.   CONCLUSION

For all the foregoing reasons, the parties submit that the proposed settlement is a fair, reasonable and adequate resolution of a *bona fide* dispute over FLSA issues. As such, the parties jointly request that the Court approve the proposed settlement, approve the form of notice and all other procedures in the proposed settlement, and retain jurisdiction to enforce the settlement. The parties request such other and further relief to which they are justly entitled.

Dated:          January 15, 2025

Respectfully submitted,

s/Melinda Arbuckle _____
Melinda Arbuckle
Ricardo J. Prieto
Wage and Hour Firm
*Counsel for Plaintiff and Proposed Class Members*
5050 Quorum Drive, Suite 700
Dallas, TX 75254
(214) 489-7653
rprieto@wageandhourfirm.com
marbuckle@wageandhourfirm.com

David M. Blanchard (P67190)
Blanchard & Walker, PLLC
*Local Counsel for Plaintiff and Proposed Class Members*

s/David M. Cessante (with permission)
David M. Cessante (P58796)
Clark Hill PLC
*Attorneys for Defendant*
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
(313) 965-8300
dcessante@clarkhill.com

221 North Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 929-4313 – Telephone
blanchard@bwlawonline.com

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Defendant who joins in the relief requested in this Motion.

s/Melinda Arbuckle
Melinda Arbuckle

## CERTIFICATE OF SERVICE

On January 15, 2025, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system of the Court. I certify that all counsel of record were served electronically thereby.

s/Melinda Arbuckle
Melinda Arbuckle

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## DETROIT DIVISION

| | | |
|---|---|---|
| Amber Lowe, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:24-cv-10054-LJM-CI |
| Trinity Health-Michigan, | § § | Hon. Laurie J. Michelson |
| Defendant. | § | Mag. J. Curtis Ivy, Jr. |

## BRIEF FORMAT CERTIFICATION FORM

I, Melinda Arbuckle, hereby certify that the foregoing brief complies with Eastern District of Michigan Local rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. I certify that each of the following is true:

- ☒ the brief contains a statement regarding concurrence, see LR 7.1(a);
- ☒ the brief, including footnotes, uses 14-point font, see LR 5.1(a)(3);
- ☒ the brief contains minimal footnotes and, in all events, no more than 10, see Case Management Requirements § III.A;
- ☒ the brief and all exhibits are searchable .pdfs, see Case Management Requirements § III.A;
- ☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, see LR 5.1(a)(2);
- ☒ deposition transcripts have been produced in their entirety and not in minuscript, see Case Management Requirements § III.A;
- ☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, see Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

s/Melinda Arbuckle
Melinda Arbuckle
Dated: January 15, 2025